UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JONATHAN J. H.,[1]

        Plaintiff,

    v.                                Civil Action 2:25-cv-761
                                            Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff, Jonathan J. H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

application for disability insurance benefits ("DIB"). This matter is before the Court on

Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition

(ECF No. 15), and the administrative record as supplemented (ECF Nos. 8, 17). For the reasons

that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed his DIB application in October 2021, alleging that he became

disabled beginning November 1, 2016. (R. at 198–204.) Plaintiff's application was denied

initially and on reconsideration in 2022 before being denied at the hearing level in September

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other
disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

2023. (*Id*. at 14–37.) After Plaintiff sought judicial review of that unfavorable determination, the parties jointly moved to remand the matter. (*Id*. at 1548–49.)

Upon remand, the matter was assigned to a new Administrative Law Judge ("ALJ"). On September 19, 2024, the ALJ held a telephonic hearing at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 1491–1516.) At the hearing, Plaintiff amended his alleged onset date to April 1, 2017. (*Id*. at 1495–96.) A vocational expert ("VE") also appeared and testified. (*Id*. at 1509–13.) On October 4, 2024, the ALJ issued a second unfavorable determination, which became final on July 18, 2025, when the Appeals Council declined to assume jurisdiction over Plaintiff's exceptions. (*Id*. at 1447–74, 1431–37.)

Plaintiff seeks judicial review of that second unfavorable determination. He first contends that the ALJ committed reversible error when evaluating opinion evidence. (Pl.'s Statement of Errors 9–16, ECF No. 10.) He next contends that the ALJ erred by determining that his mental health impairments were not severe and, relatedly, failing to adequately explain how his non-severe mental health impairments impacted his residual functional capacity ("RFC"). [2] (*Id*. at 16.) The Court finds that Plaintiff's contentions of error lack merit.

## II.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on October 4, 2024. (R. at 1447–74.) The ALJ initially determined that Plaintiff last met the insured status requirements on December 31,

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

2022. (*Id*. at 1453.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 1, 2017, through his date last insured. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: right knee meniscus tear status post-surgical intervention; right cubital tunnel syndrome and ulnar nerve neuritis; right shoulder labral tear, impingement syndrome, and osteoarthritis with status post replacement; and chronic pain syndrome. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 1455.)

The ALJ then set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform light work, as defined by the regulations, with the following exceptions (20 CFR 404.1567(b)). He can

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?

> 2. Does the claimant suffer from one or more severe impairments?

> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

operate foot controls with the right foot frequently and hand controls with the right hand frequently. He can occasionally reach overhead with the right arm. For all other reaching, he can reach frequently with the right arm. He can handle and finger items frequently with the right hand. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and never crawl. The claimant can work at unprotected heights occasionally, around moving mechanical parts occasionally, in extreme cold frequently, in extreme heat frequently, and in vibration occasionally. He can operate a motor vehicle frequently.

(*Id*. at 1456.) At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 1464.) The ALJ then relied on the VE's testimony at step five to determine that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative jobs of routing clerk, collator operator, and router. (*Id*. at 1465.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 1466.)

## III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts

4

from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error when evaluating medical opinion evidence and by finding that none of his mental health impairments were severe. (Pl.'s Statement of Errors 9–19, ECF No. 10.) The Court considers each contention in turn and finds that both lack merit.

### A.    Medical Opinion Evidence

Plaintiff first contends that the ALJ reversibly erred when he evaluated medical opinion evidence. This contention lacks merit.

#### 1.    Relevant Regulations

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe

---

[4] Because Plaintiff's application was filed in 2021, it is subject to regulations governing applications filed after March 27, 2017.

5

five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

### 2.     Dr. Gessel's Opinions

Plaintiff injured his right arm at work in November 2016. (R. at 304–05, 342.) Plaintiff's physician, Dr. Gessel, authored two return-to-work letters and included return-to-work restrictions in two treatment notes. (*Id.* at 926, 936, 948, 952.) The ALJ evaluated these

6

statements as medical opinions and determined that they were not persuasive because they were

"inadequately supported and generally inconsistent with the collective record." (*Id*. at 1462.)

> The ALJ wrote as follows:

> The undersigned finds the opinions of Jason Gessel, D.O., not persuasive (31F/5, 15). Dr. Gessel examined the claimant and opined the claimant could return to work November 29, 2016, for a forty-hour work week at 8-hours per day but could perform no lifting with the right arm. First, this opinion pertains at least partially to a period prior to the amended alleged onset date. Second, the opinion limits itself by identifying the restrictions as "temporary" and indicates that if the claimant could not be provided such a job, he would be off work until he is re-evaluated following an MRI and/or EMG (31F/5). The Social Security Administration requires a finding of disability for 12 months and temporary restrictions lasting brief periods are not beneficial in such a determination. Moreover, this temporary restriction appears speculative based upon the restriction expiring following diagnostic testing. This is also inadequate as there is no contingency if the claimant were to simply refuse further treatment, as the opinion lacks any expiration date.
> Dr. Gessel later offered another opinion on January 31, 2017, indicating the claimant is still limited to no lifting with the right arm for six additional weeks (31F/15). Finally, turning to the "no lifting with the right arm" limitation, this is simply not consistent with the record. Directly following the claimant's injury in November of 2016, the claimant was treated with Toradol and reported improvement (2F/44). In fact, even in November of 2016, the claimant was noted with 5/5 strength, tenderness, and positive special testing, with a mild limitation in range of motion which is inconsistent with an inability to use the right upper extremity (31F/8). The claimant's objective performance within physical therapy records, medical examinations, and EMG testing reveals considerable improvement by mid-2017 with conservative treatment (e.g., 3F/2; 12F/8; 36F). These findings, as well as the claimant's subsequent performance, clearly demonstrate the claimant never had an inability to use his right upper extremity for at least 12 months (e.g., 6F; 9F/78; 10F; 13F; 16F; 31F). Even the claimant's later shoulder injury did not result in an inability to use his right arm for lifting (e.g., 9F/4, 7; 11F/77; 13F/8; 15F; 16F; 23F/1, 4). Additionally, the record notes unusual and exaggerated complaints during examinations (14F/6; 16F/5). Moreover, Dr. Gessel opined the claimant could return to work with a five-pound lifting limit, such as in April of 2017 and May of 2017, which is inconsistent with the corresponding objective findings including 5/5 strength and full range of motion, especially in light of the claimant's noted exaggerations within other records (14F/6; 16F/5; 31F/23, 27, 31). Moreover, the five-pound limitation is inconsistent with other examinations wherein the claimant's strength is generally described as normal or 5/5. Thus, Dr. Gessel's opinions are inadequately supported and generally inconsistent with the collective record.

(*Id*. at 926.)

As this discussion demonstrates, the ALJ determined that a November 2016 return-to-work letter was not persuasive for several reasons, including that it expressly stated that the opined restrictions were temporary. (*Id.*) That determination accurately reflects the record. (*Id.* at 926.) The ALJ did not err by discounting an opinion addressing only a temporary inability to work. *See Fisher v. Comm'r of Soc. Sec.*, 404 F. Supp. 3d 1156, 1173 (N.D. Ohio 2019) (citing *Fellows v. Comm'r of Soc. Sec.*, 2017 WL 3473842, at *5 (W.D. Mich. Aug. 14, 2017) (finding no error when ALJ assigned little weight to physician's temporary work restrictions because the restrictions were not permanent).

In both the November 2016 and January 2017 return-to-work letters, Dr. Gessel opined that Plaintiff could perform "no lifting with the right arm." (R. at 926, 936.) The ALJ discounted that limit because Dr. Gessel's contemporaneous treatment notes documented that his examination of Plaintiff's elbow found 5/5 strength with pain and only a mild limit in range of motion. (*Id.* at 1462, 929.) Although the ALJ did not expressly refer to supportability when discussing these findings, this discussion reflects that he considered that factor.

The ALJ also explained that the no-lifting limit in both letters was inconsistent with other evidence showing that Plaintiff's condition had improved by mid-2017. (*Id.* at 1462.) Substantial evidence supports that consistency analysis. The ALJ cited a May 4, 2017 EMG showing improvement in Plaintiff's right ulnar neuropathy compared to a January 5, 2017 EMG. (*Id.* at 539.) The ALJ also cited a May 8, 2017 examination note documenting that Plaintiff was "showing great improvement since the date of injury," even if he maybe would not regain full strength in his right hand. (*Id.* at 375.)

Plaintiff's May 2017 physical therapy notes likewise reflected significant improvement. They showed that Plaintiff was responding well to physical therapy, had improved wrist strength,

normal elbow range of motion, decreased distal ulnar neuropathy, and he could frequently lift 40 pounds from waist to shoulder and from knees to waist without an increase in symptoms. (*Id*. at 1196, 1198.) By June 2017, Plaintiff could lift 50 pounds from floor to chest without pain or difficulty, and he could push and pull 60 pounds. (*Id*. at 1197.) A July 2017 MRI of Plaintiff's elbow further showed only mild tendinosis of the common flexor tendon with minimal inflammation and no ligament tears. (*Id*. at 953.)

The ALJ similarly discounted Dr. Gessel's April and May 2017 opined five-pound lifting limit because Dr. Gessel's own contemporaneous examinations notes documented full range of motion and 5/5 strength. (*Id*. at 1462, 944, 948.) Substantial evidence supports that determination. In April 2017, Dr. Gessel wrote that Plaintiff had full range of motion and 5/5 strength in all muscles except for resisted wrist flexion. (*Id*. at 944.) In May 2017, Dr. Gessel wrote that Plaintiff had full elbow flexion, extension, pronation, and supination and 5/5 strength. (*Id*. at 948.) This discussion also reflects that the ALJ considered the supportability factor.

The ALJ further explained that Dr. Gessel's no-lifting and five-pound lifting limits were inconsistent with other record evidence, even after Plaintiff later injured his right shoulder. (*Id*. at 1462.) Substantial evidence supports that consistency analysis. As the ALJ noted elsewhere, Plaintiff underwent right ulnar decompression and transposition in August 2017. (*Id*. at 377.) Follow up examinations in December 2017 and January 2018 continued to document 5/5 strength with only slight weakness, and full flexion, extension, pronation, and supination, or full range of motion in Plaintiff's elbow. (*Id*. at 979, 984.)

Plaintiff subsequently injured his right shoulder when he fell while getting into a car in March 2018. (*Id*. at 987.) A March 2018 MRI revealed a displaced posterior labral tear and a partial rotator cuff tear. (*Id*. at 556.) An April 2018 EMG also showed that Plaintiff had a right

ulnar neuropathy with chronic denervation. (*Id*. at 398.) Nevertheless, a June 2018 examination found full shoulder range of motion, 5/5 strength, and no joint instability on provocative testing. (*Id*. at 1003.) Plaintiff was referred to a shoulder specialist and advised that he required additional procedures for his elbow. (*Id*. at 997, 1003.) Plaintiff was instructed to call when he was ready for the elbow-related procedures. (*Id*. at 1003.)

Although Plaintiff did not undergo those elbow procedures until September 2020, the intervening medical evidence did not support a complete prohibition on lifting with the right arm due to his elbow condition. (*Id*. at 450, 466.) For instance, a February 2020 examination found intact grip strength with no focal ulnar numbness, sensory loss in the fourth and fifth fingers, or atrophy. (*Id*. at 426.) An April 2020 physical therapy evaluation described Plaintiff's ability to flex his right elbow as "good." (*Id*. at 437.) A June 2020 EMG resulted in only "borderline findings" for a "very mild ulnar neuropathy at the elbow." (*Id*. at 569.) Although another June 2020 examination documented tenderness and ulnar nerve subluxation with flexion and extension, Plaintiff had no elbow instability, muscle wasting, sensory changes, atrophy, or compromised ulnar nerve function. (*Id*. at 567.) Plaintiff also had a negative Froment's and Wartenberg's sign. (*Id*.)

Plaintiff's September 2020 ulnar nerve decompression was successful. (*Id*. at 455.) By December 2020, he demonstrated full extension and flexion in his elbow, no instability, and a negative Tinel test. (*Id*. at 610–11.) A March 2021 examination similarly documented full range of motion in the right elbow; a negative Tinel test; full flexion and extension of the wrist and fingers; and 5/5 strength in his wrist and finger flexors and intrinsic hand muscles. (*Id*. at 624.) He also had good adduction strength in his thumb and a negative Froment's sign. (*Id*.)

Finally, the ALJ discounted Dr. Gessel's "no-lifting" and five-pound lifting" limits because they were inconsistent with notes indicating that Plaintiff exhibited "unusual and exaggerated complaints during examinations." (*Id*. at 1462.) Substantial evidence also supports that determination. In December 2020, an examiner observed that Plaintiff maneuvered his right shoulder to remove his jacket while he was distracted, but during testing, he "struggled with being able to get through it grimacing and biting his teeth and becoming red faced." (*Id*. at 611.)

In sum, the ALJ provided specific, record-based reasons for determining that Dr. Gessel's opinions were unpersuasive. Plaintiff's contention of error, therefore, lacks merit.

### 3.    PA-C Kibbey's Opinion

Plaintiff next contends that the ALJ erred when evaluating an opinion from PA-C Kibbey. (Pl.'s Statement of Errors 12–13, ECF No. 10.) This contention of error also lacks merit.

On May 7, 2020, PA-C Kibbey examined Plaintiff after he had shoulder surgery. (R. at 573–74.) She wrote that Plaintiff was "deemed temporary light duty," with "no lifting, carrying, pushing or pulling anything greater than 10 pounds above his shoulders." (*Id*. at 574.) The ALJ determined this opinion was not persuasive writing as follows:

> The undersigned finds the opinions of Jennifer Kibbey, PA-C, not persuasive (13F/19). Ms. Kibbey opined the claimant could perform light exertional activity without lifting, carrying, pushing, or pulling anything greater than ten pounds above the shoulders (13F/19). While the undersigned agrees with a light residual functional capacity, the claimant's objective performance during examinations does not warrant the above the shoulder limitations as articulated. The undersigned notes the claimant's examinations are more consistent with decreasing the frequency of specific reaching rather than the weight based upon generally normal strength findings in the right upper extremity versus his subjective reports of pain and related abnormal findings (e.g., 6F; 9F/78; 10F; 13F; 16F; 31F). Additionally, the record notes unusual and exaggerated complaints during examinations (14F/6; 16F/5). Collectively, the record is inconsistent with the degree of limitations opined.

(*Id*. at 1463.)

As this discussion demonstrates, the ALJ agreed with PA-C Kibbey's opined light work limit, but he discounted her opinion prohibiting Plaintiff from lifting, carrying, pushing, or pulling more than 10 pounds above shoulder level. (*Id*.) The ALJ explained that this limitation was inconsistent with Plaintiff's generally normal strength test results which instead supported a limit to frequent overhead lifting. (*Id*.)

Substantial evidence supports that consistency analysis. As discussed above, Plaintiff injured his shoulder in March 2018. Nevertheless, a June 2018 examination documented 5/5 strength, full range of motion, no joint instability on provocative testing, and normal muscle tone and bulk. (*Id*. at 1003.) Although Plaintiff reported worsening shoulder pain in August 2018, and his condition was noted to have failed to respond to physical therapy in February 2019 (*id*. at 1005, 505), his condition improved significantly after another shoulder surgery in March 2019. Indeed, treatment notes from April and May 2019 noted significant improvement (*id*. at 587, 1221), and examinations throughout 2019 and 2020 consistently showed 4/5 strength and no right shoulder instability (*id*. at 586, 582, 590, 578, 576, 574, 556).

The record continued to reflect generally preserved strength thereafter. Although imaging revealed that he developed severe osteoarthritis in his right shoulder after his March 2019 shoulder surgery, in August 2021, Plaintiff's strength was described as "good," and he had 4+/5 strength with pain with resisted external and internal rotation. (*Id*. at 831.) In October 2021, Plaintiff demonstrated 4+ to 5- strength with resisted rotator cuff abduction; 5- strength with resisted scaption and forward elevation; and 5- to 5 strength with resisted external rotation. (*Id*. at 559.) After a second shoulder surgery in September 2021, Plaintiff was noted in January 2022 to be "doing exceptionally well" and he demonstrated 4/5 strength with resisted internal and external rotation without pain. (*Id*. at 821, 816, 815.)

12

The ALJ also determined that PA-C Kibbey's opinion was inconsistent with evidence documenting exaggerated symptom presentation during examinations. (*Id*. at 1463.) Again, substantial evidence supports that explanation. As discussed above, a December 2020 examiner observed Plaintiff maneuvering his right shoulder to remove a jacket but demonstrating great difficulty during examinations that same day. (*Id*. at 611.)

Although the ALJ's consistency analysis was well supported, he did not expressly discuss the supportability factor. The Sixth Circuit Court of Appeals has not addressed when an ALJ's failure to articulate the supportability and consistency factors is harmless. District Courts within the Sixth Circuit have held, however, that such an error is harmless where: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with it, or (3) despite the articulation error, the goal of the regulation was otherwise met. *See, e.g.*, *Wilson C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00457, 2022 WL 4244215, at *6–7 (S.D. Ohio Sept. 15, 2022); *Burba v. Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020); *Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *5 (E.D. Tenn. Mar. 21, 2023); *Nicholas E. v. Bisignano*, No. 4:25-CV-00002-HBB, 2025 WL 2054367, at *4 (W.D. Ky. July 22, 2025).

The third circumstance applies here. The Court must, therefore, decide if the ALJ's evaluation of PA-C Kibbey's opinion fulfilled the purpose of § 404.1520c(b)(2). Stated differently, the Court must decide whether the ALJ's explanation permits meaningful judicial review and enables Plaintiff to understand why PA-C Kibbey's opinion was discounted. *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00176, 2022 WL 4395682, at *9 (S.D. Ohio Sept. 23, 2022). The Court finds that it does.

13

The ALJ explained that he rejected PA-C Kibbey's above-the-shoulder lifting limit because it was inconsistent with Plaintiff's generally normal strength findings. (R. at 1463.) Notably, PA-C Kibbey's May 7, 2020 opinion documented her findings from an examination of Plaintiff's right shoulder that day, including that he demonstrated 4/5 strength. (*Id*. at 573–74.) Thus, even though the ALJ did not explicitly indicate that he was addressing the supportability of PA-C Kibbey's opinion, his explanation applied to her contemporaneous findings. It, therefore, allows both this Court and Plaintiff to understand why her above-the shoulder lifting limit was discounted.

In short, the ALJ provided specific, record-based reasons for determining that PA-C Kibbey's opinions were unpersuasive. Moreover, the ALJ's discussion of those reasons adequately described why her above-the-shoulder lifting limit was discounted, and thus, any articulation error was harmless. Plaintiff's contrary contention lacks merit.

### 4.  Dr. Todoki's Opinion

Plaintiff also contends that the ALJ erred when evaluating Dr. Todoki's opinion. (Pl.'s Statement of Errors 14–16, ECF No. 10.) This contention of error lacks merit.

On June 11, 2018, Dr. Todoki completed a Physician's Report of Work Ability Form from the Ohio Bureau of Workers' Compensation. (R. at 392–93.) In it, Dr. Todoki opined that Plaintiff was limited to "a one arm job only" and "[n]o use of right arm." (*Id*. at 392.) The ALJ determined that this opinion was not persuasive. (*Id*. at 1464.) He wrote as follows:

> The undersigned finds the opinions of George Tokodi, M.D., not persuasive (5F/13). Dr. Tokodi opined the claimant could not use the right arm, with additional limitations. This is not persuasive based on physical examinations showing good strength, the lack of significant testing consultative with this degree of limitation, and reports of over exaggeration. Put simply, the overall record, as explained in detail above, is not consistent with the claimant being limited to one-armed work. The undersigned notes the claimant's examinations are more consistent with decreasing the frequency of specific reaching rather than an outright preclusion to

14

use of the extremity based upon generally normal strength findings in the right upper extremity versus his subjective reports of pain and related abnormal findings (e.g., 6F; 9F/78; 10F; 13F; 16F; 31F). Additionally, the record notes unusual and exaggerated complaints during examinations (14F/6; 16F/5). Collectively, the record is inconsistent with the degree of limitations opined.

(*Id.*)

As this discussion demonstrates, the ALJ determined that Dr. Todoki's opinion—no use of the right arm—was inconsistent physical examinations repeatedly finding that Plaintiff had good strength in his right upper extremity. Substantial evidence supports that determination. As discussed in the preceding section, although Plaintiff experienced pain and underwent multiple surgeries, examinations regularly showed 4/5 or 5/5 strength, improvement following surgeries, and no instability in his right shoulder. (*See id.* at 556, 559, 574, 576, 578, 582, 586, 590, 815–16, 831, 1221.)

The ALJ also relied on evidence suggesting symptom exaggeration. As previously discussed, a December 2020 examiner observed Plaintiff maneuvering his right shoulder while removing a jacket but exhibiting substantially more difficulty during testing. (*Id.* at 611.) The ALJ reasonably determined that this evidence was inconsistent with Dr. Todoki's opinion.

Although the ALJ did not explicitly discuss the supportability factor, that omission was harmless because the goal of § 404.1520c(b)(2) was again met. The ALJ explained that he discounted Dr. Todoki's "no use" of the right arm limit because it was inconsistent with Plaintiff's generally normal strength findings. (*Id.* at 1464.) Significantly, Dr. Todoki's opinion itself refers to his June 6, 2018 office notes, which documented 5/5 shoulder strength, normal muscle tone and bulk, and no joint instability. (*Id.* at 393, 1003.) Thus, even though the ALJ did not expressly discuss supportability, his explanation applied to Dr. Todoki's contemporaneous

15

examination findings. The ALJ's discussion therefore adequately allows both this Court and Plaintiff to understand why Dr. Todoki's "no use" limit was discounted.

Plaintiff nevertheless contends that the ALJ erred because he failed to recognize that Dr. Todoki's limits were consistent with the limits opined by PA-C Kibbey and Dr. Gessel. (Pl.'s Statement of Errors 15, ECF No. 10.) This argument is unavailing. As one Court has observed, "the purported consistency of medical opinions of records does not automatically render them persuasive." *Mary E. O. v. O'Malley*, No. 3:23-CV-00344-CRS, 2024 WL 3876477, at *7 (W.D. Ky. July 24, 2024), *report and recommendation adopted sub nom.*, *Mary O. v. O'Malley*, 2024 WL 3868249 (W.D. Ky. Aug. 19, 2024). Nor was the ALJ required to expressly compare the opinions to one another. *See id.* Instead, the ALJ summarized the limits and then compared them to the record evidence. That analysis permits Plaintiff to understand why the ALJ determined that the opinions were unpersuasive. *See id.* (finding no reversible error even though ALJ did not explicitly discuss consistency of medical opinions; ALJ compared each opinion to the rest of the record).

In sum, the ALJ provided specific, record-based reasons for finding Dr. Todoki's opinion unpersuasive. The ALJ's discussion also adequately explained why the opinion was discounted, and thus, any articulation error was harmless. Accordingly, Plaintiff has not shown reversible error.

**B.     Plaintif's Mental Health Impairments**

Plaintiff also contends that ALJ reversibly erred by finding that his mental health impairments were not severe and failing to adequately discuss those non-severe impairments when assessing his RFC. (Pl.'s Statement of Errors 16–20, ECF No. 10.) Again, the Court finds no reversible error.

16

At step two of the sequential evaluation process, the ALJ evaluates the "medical severity" of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

When evaluating the severity of mental health impairments, such as anxiety, an ALJ must apply a "special technique," which involves rating the degree of limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). These areas, referred to as the "paragraph B criteria," are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If an ALJ rates the claimant's limitations as "none" or "mild," the mental impairment is generally considered non-severe, absent evidence of more than a minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Once an ALJ identifies at least one severe impairment of any type, however, the failure to label other impairments as severe is generally not reversible error. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the relevant question becomes whether the ALJ considered the limiting effects of all impairments—severe and non-severe—when assessing an RFC at step four. *Id. See also* 20 C.F.R. §§ 404.1545(e), 416.945(e). Indeed, Social Security Ruling 96-8p instructs that an ALJ must consider "all of the individual's impairments, including those that are not 'severe'" when assessing an RFC. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The Sixth Circuit has clarified, however, that even where an ALJ does not explicitly reference a

17

plaintiff's non-severe impairments at the RFC assessment stage, an ALJ's analysis may still satisfy SSR 96-8p if the ALJ's determination: (1) refers to SSR 96-8p, (2) discusses the non-severe impairments at step two, and (3) provides assurances that all symptoms and the entire record were considered when assessing an RFC. *See Emard*, 953 F.3d at 851–52. *See also Heather M. v. Comm'r of Soc. Sec.*, No. 2:24-CV-1108, 2025 WL 313936, at *4 (S.D. Ohio Jan. 28, 2025) (applying *Emard* standard), *report and recommendation adopted*, 2025 WL 520855, (S.D. Ohio Feb. 18, 2025); *John S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4207, 2023 WL 6141664, at *1 (S.D. Ohio Sept. 20, 2023) (applying *Emard* standard).

Such is the case here. At step two, the ALJ found that Plaintiff had at least one severe impairment, but that his anxiety disorder, depressive disorder, bipolar disorder, somatic symptom disorder, post-traumatic stress disorder ("PTSD"), and intermittent explosive disorder were not severe. (R. at 1453.) Although the ALJ did not discuss Plaintiff's non-severe mental health impairments when formulating Plaintiff's RFC at step four, the ALJ explicitly cited SSR 96-8p and the applicable regulations in his summary of applicable law, and he noted that he was required to consider all of Plaintiff's impairments, including non-severe ones, when he assessed Plaintiff's RFC. (*Id.* at 1452.) ("In making this [RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe[.]") (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.945, and SSR 96-8p)).

At step two, the ALJ stated that Plaintiff's mental health impairments did not cause more than a minimal limitation in his ability to perform basic work activities. (*Id.* at 1453–54.) The ALJ also evaluated the paragraph B criteria at step two and determined that Plaintiff no limitation in any of the four broad functional areas, writing as follows:

> In making this finding, the undersigned has considered the broad functional areas
> of mental functioning set out in the disability regulations for evaluating mental

18

disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, the claimant had no limitation. The claimant reported that he completed both high school and college in regular education courses without retention but did have assistance, such as a tutor (22F/2). Moreover, the claimant also completed specialized vocational training in fire suppression (22F/2). The claimant reported being able to legally drive and regularly presented alone during various medical visits, including physical therapy visits and general medical followups (22F/3). While the claimant described problems with his memory including forgetfulness, the record does not establish memory dysfunction within treatment records. For example, the claimant was oriented, recalled information, performed serial iterations, demonstrated within normal limits intellectual functioning, and demonstrated intact short-term memory, intact longterm memory, and an estimated fund of knowledge that was within normal limits (8F/7; 22F/4). Collectively, the record does not support any limitation in this area of functioning.

The next functional area is interacting with others. In this area, the claimant had no limitation. The claimant alleged interpersonal issues within the record, such as depressed mood and crying spells; however, the vast majority of the record contains unremarkable psychiatric findings or makes no notes related to mental health. Additionally, the brief mental health treatment contained within the record does not support even a mild level limitation in this area. For example, the claimant was noted to be feeling a lot better with medications after an acute episode (12F/22). The claimant also reported that he was not willing to use medications until he found out he was no longer going to be compensated and was looking for another job (17F/4). Mental health treatment records reveal only brief compliance with medications and little treatment (22F; 24F; 35F). Additionally, the claimant has greater activities of daily living than admitted at times. For example, the claimant was noted to interact with many people and travel to places such as the Amish Country and to Myrtle Beach (8F/3). In fact, despite reporting social withdraw, he admitted to visiting with his family on the holidays, going shopping, dining out, caring for his girlfriend's children, relating to church members, and attending church (8F). The undersigned also notes exaggeration was noted within physical medical records (16F/5). Collectively, the record does not support any limitation in this area of functioning.

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had no limitation. The claimant reported issues with concentration (22F/5). However, the claimant was described as alert, responsive, able to track conversation without significant difficulty, able to complete serial testing, and generally following conversations without a need for regular repetition of questions (22F). The claimant is also described as having a normal and coherent stream of thought and flow of ideas (8F/7). The claimant reported activities of daily living including driving, caring for his dog, performing housework, caring for

19

children, reading books, watching television, and handling his own personal finances (8F/7-8). The claimant's performance within the record and reported activities of daily living support no limitation in this area of functioning.

The fourth functional area is adapting or managing oneself. In this area, the claimant had no limitation. The claimant reported some issues with stress at times within the record; however, the claimant was observed to have rapid improvement with acute medication management (e.g., 2F). Moreover, the claimant did not receive significant treatment within the record as he reported not being willing to use medications or self-discontinuing medications (17F/4; 22F; 24F 24F). Despite this, the claimant's mental status examinations overall are generally normal. While some abnormal findings are documented associated with acute psychological symptoms, the vast majority were unremarkable, as well as his high-functioning activities of daily living support no limitation in this area of functioning (e.g., 8F).

(*Id*. at 1454–55.) Moreover, at step two, the ALJ stated that because Plaintiff's mental health impairments were non-severe, "corresponding limitations in the residual functional capacity are warranted (20 CFR 404.1520a(d)(1))." (*Id*. at 1455.)

Finally, the ALJ provided assurances that he had considered all symptoms. When assessing Plaintiff's RFC at step four, the ALJ stated that he had considered "all symptoms" and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id*. at 1456.)

In short, the ALJ referred to SSR 96-8p, discussed Plaintiff's non-severe mental health impairments at step two, indicated that the non-severe impairments warranted no limits, and provided assurances that he had considered all symptoms when he assessed Plaintiff's RFC. Accordingly, pursuant to *Emard*, a published and controlling case, the undersigned concludes that the ALJ did not reversibly err by failing to consider Plaintiff's non-severe mental health impairments when assessing his RFC even though the ALJ did not discuss it again at the assessment stage. 953 F.3d 851–52. *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1006 (6th Cir. 2025) (relying on *Emard* to find that ALJ did not fail to consider non-severe impairments despite lack of discussion at assessment stage; ALJ acknowledged that he was

required to consider all impairments when assessing RFC, including non-severe ones, and ALJ repeatedly stated that all limits were considered); *Turner v. Comm'r of Soc. Sec.*, No. 20-6422, 2021 WL 6275633, at *4 (6th Cir. Sept. 24, 2021) (relying on *Emard* to find that ALJ sufficiently demonstrated that she considered all of plaintiff's impairments despite lack of discussion of non-severe impairments at the assessment stage; ALJ stated that she had conducted a "careful consideration of the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

Plaintiff nonetheless contends that the ALJ erred because "[t]he 'normal' mental status findings cited by the ALJ" were from examinations conducted by providers who treated his physical impairments instead of mental health professionals. (Pl.'s Statement of Errors 17–18, ECF No. 10.) The Court is not persuaded. An ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Therefore, the ALJ did not err by considering findings from physicians who treated Plaintiff's physical impairments.

For all these reasons, the Court does not find that the ALJ reversibly erred by determining that Plaintiff's mental health impairments were not severe. Accordingly, his second contention of error lacks merit.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*

CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE